PEOPLE ex rel. SMITH v. McKAY, Police Com'r.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

MUNICIPAL CORPORATIONS (§ 185*)—POLICE FORCE—NEGLECT OF DUTY—INFAL-
LIBILITY.

    Relator, a patrolman and detective, was given a bench warrant in De-
cember, 1912, for the arrest of K. It was then believed that K. resided
at a certain street number; but he was not found there, and he was not
found on April 15, 1913, when relator's superior informed him that K.
could be found at 23 Avenue B. Relator went to such address many
times, and interviewed the tenants and janitress without success. He re-
ported frequently to his lieutenant, but failed to interview the landlord
of the premises. He communicated with K.'s bondsmen, and finally, in
the middle of June, found K. at the address given; his failure to find
him before being due to the fact that K. had changed his name and was
known there and in the neighborhood by his alias. *Held,* that relator's
failure to interview the landlord and to more promptly arrest K. was
not such neglect of duty as justified his dismissal from the force.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
429–509; Dec. Dig. § 185.*]

Certiorari by the People, on relation of John M. Smith, against
Douglas I. McKay, as Police Commissioner, to review respondent's
determination dismissing relator from the police force of the city of
New York. Writ granted, and determination annulled.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLE-
TON, and PUTNAM, JJ.

Arnon L. Squiers, of New York City, for relator.
Frank Julian Price, of Brooklyn (James D. Bell, of Brooklyn, on
the brief), for respondent.

STAPLETON, J. The relator, a patrolman on the police force of
the city of New York, assigned to the detective bureau and designated
a detective of the second grade, was charged with neglect of duty in
that he, "some time during the month of April, 1913, failed and neg-
lected to promptly apprehend and arrest one Louis Kaufer for for-
feiture of bail bond and grand larceny; he having been informed that
the said Kaufer was then residing at No. 23 Avenue B, borough of
Manhattan, city of New York." He was dismissed the force, and he
invokes the remedy of certiorari.

Kaufer had forfeited a bail bond, and the relator, in December,
1912, was given a bench warrant for his arrest. It was believed that
Kaufer then resided at 303 East Houston street; but the relator could
not find him at that address, and had not found him on April 15, 1913,
when his official superior, Lieutenant Judge, upon information received
from the office of the district attorney of Kings county, told him that
Kaufer could be found at 23 Avenue B. The relator did not know
Kaufer and had not seen his photograph. The relator went to 23
Avenue B. He went there many times. He interviewed the tenants
and neighbors, and quizzed the janitress, but without success. Some
of them could not understand him, and those who did understand him
did not know Kaufer. He reported frequently to his lieutenant. He

entered into communication with the bondsman, and finally, in the middle of June, with the co-operation of the bondsman, he uncovered Kaufer and then arrested him.

The neglect of duty lay, apparently, in his failure to interview the landlord of the premises 23 Avenue B. The landlord did not live at that address. The relator did not call upon the landlord, but he did talk with the janitress, and the janitress usually, in the words of Lieutenant Judge, "would be the best person to get the information from." Janitors usually let the apartments, and are on more or less intimate terms with the tenants. In this instance the janitress rented the apartment to Kaufer, collected the rent from him, and introduced him to the landlord. It was the relator's misfortune, however, that during the time intervening between the letting and his quest the janitress had gone to Europe, and her place was taken by one who knew Kaufer only as Schmidtwick. As Schmidtwick he was known in the neighborhood, and that doubtless accounts for the relator's inability to find him.

There was not a suggestion of evidence tending to show that the relator had not acted in the utmost good faith. He had borne a good reputation in the department. As a detective he had performed his duties properly. To most people it would seem that in this particular instance he had done his duty honestly and intelligently. It is undeniable that he performed it with ultimate success; but because he did not make the arrest with a promptness sufficient to satisfy the exacting mind of some official superior, and because, although he made diligent effort in all other respects, he failed to seek information from the one person who, unknown to him, was in a position to enlighten him, he was dismissed the service. We think he was not justly dismissed. Unless a failure to act infallibly can be pronounced neglect, there was nothing that warranted the drastic action of the commissioner. The highest standard of conduct and efficiency is exacted from police officers in the city of New York by comprehensive and sometimes complicated rules, but not until this case have the governing authorities attempted to exact infallibility.

The determination of the police commissioner should be annulled, and the relator reinstated, with $50 costs and disbursements. All concur.